19-3075-cr(CON)
United States v. Jimenez

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of February, two thousand twenty-one.

PRESENT:   RAYMOND J. LOHIER, JR.,
            STEVEN J. MENASHI,
                *Circuit Judges*,
            ERIC KOMITEE,
                *Judge*.[*]

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

    *Appellee*,

      v.                                         No. 19-3075-cr(CON)

YESSENIA JIMENEZ,

---

[*] Judge Eric Komitee, of the United States District Court for the Eastern District of New York, sitting by designation.

*Defendant-Appellant.*\*\*

-------------------------------------------------------------------

FOR DEFENDANT-APPELLANT
YESSENIA JIMENEZ:

CÉSAR DE CASTRO, The Law Firm of César de Castro, P.C., 7 World Trade Center, 34th Floor, New York, NY

FOR APPELLEE:

NATHAN REHN (Louis A. Pellegrino, David Abramowicz, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendant-Appellant Yessenia Jimenez, a former police officer of the New York City Police Department, appeals from a judgment of conviction entered by the District Court (Caproni, J.) following a four-day jury trial in which Jimenez

---

\*\* The Clerk of Court is directed to amend the caption as noted.

was found guilty of multiple narcotics and firearms charges under 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 846, as well as 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. The District Court sentenced Jimenez principally to a 192-month term of imprisonment and a five-year term of supervised release. On appeal, Jimenez raises three arguments: first, the jury selection process violated Batson v. Kentucky, 476 U.S. 79 (1986); second, the District Court abused its discretion when it prevented defense counsel from further cross-examining the Government's key witness; and third, the Government's summation improperly used Jimenez's post-arrest silence to impeach her trial testimony. We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision to affirm.

1. The Batson Challenge

We first consider the District Court's decision overruling Jimenez's Batson challenge. "[T]he ultimate question of discriminatory intent represents a finding of fact that will be set aside only if clearly erroneous." United States v. Taylor, 92

F.3d 1313, 1326 (2d Cir. 1996); see also United States v. Brown, 352 F.3d 654, 661 (2d Cir. 2003). There was no clear error here.

Jimenez, who describes herself as a Hispanic woman, made out a prima facie Batson claim by demonstrating that three of the Government's five peremptory strikes were used against prospective jurors 4, 12, and 16, all of whom are described on the record as Hispanic women. See Batson, 476 U.S. at 97. The Government in response offered race- and sex-neutral explanations for its decision to strike the three women. After defense counsel responded, the District Court found that the Government "rebutted any suggestion of discrimination" and thus rejected Jimenez's Batson challenge. App'x at 350.

We have held that the race- and sex-neutral explanations offered in response to a Batson challenge "need not be persuasive or even plausible for the non-movant to meet his obligation at step two of the Batson procedure and thereby advance the inquiry to the third step." Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006) (quotation marks omitted) (race-based Batson challenge); see United States v. Martinez, 621 F.3d 101, 109 (2d Cir. 2010) (sex-based Batson challenge). At that third step, "the decisive question will be whether counsel's

4

[non-discriminatory] explanation for a peremptory challenge should be believed." Messiah, 435 F.3d at 195 (quotation marks omitted). Because the District Court is better situated to make credibility determinations while presiding over the jury selection process, we give "great deference" to the trial court's rulings. United States v. Lee, 549 F.3d 84, 94 (2d Cir. 2008) (quotation marks omitted). The record indicates that the District Court made the required assessment of credibility, and we find no clear error in the District Court's decision to credit the Government's race- and sex-neutral explanations for its peremptory strikes.[1]

### 2. Limits on Defense Counsel's Cross-Examination

Jimenez also argues that the District Court erroneously prevented the defense from introducing photographic and testimonial evidence regarding the

---

[1] We note that the District Court could have more explicitly stated which explanation was credited with respect to Prospective Juror 16. The District Court cited both the Government's concern with that juror's emotional state and its own concern with the juror's English language skills. But given that a juror's "distractedness is, by itself, a sufficient [non-discriminatory] ground to support exercise of a peremptory challenge," United States v. Farhane, 634 F.3d 127, 157 (2d Cir. 2011), we conclude that the District Court did not clearly err in rejecting Jimenez's Batson challenge as to Prospective Juror 16.

purported social nature of trips Jimenez took to Massachusetts, which the government alleged were taken for the purpose of drug trafficking. "We review evidentiary rulings, including a trial court's decision to limit the scope of cross-examination, for abuse of discretion." United States v. Sampson, 898 F.3d 287, 308 (2d Cir. 2018) (quotation marks omitted). Here, contrary to Jimenez's claims, defense counsel was allowed to question the Government's key witness, Felix Morel-Moreta, about the social nature of his and Jimenez's trips to Massachusetts. Moreover, the photos Jimenez sought to introduce added nothing to Morel-Moreta's testimony that his trips with Jimenez to Boston sometimes involved family and social activities. The District Court did not abuse its discretion in "impos[ing] reasonable limits" to exclude evidence that was "repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

### 3. The Government's Summation

Finally, we reject Jimenez's argument that the Government violated her Fifth Amendment rights by using Jimenez's silence to impeach her trial testimony. The Government may not use a defendant's post-arrest, post-

6

Miranda warnings silence to impeach her trial testimony. See Doyle v. Ohio, 426 U.S. 610, 618 (1976); United States v. Casamento, 887 F.2d 1141, 1179 (2d Cir. 1989). The parties dispute whether the Government in summation referenced Jimenez's pre- or post-arrest silence when it stated that Jimenez failed to tell the police that she did not know where the money came from "when [she was] being arrested." App'x at 838-39. But even if the Government's summation impermissibly referenced Jimenez's post-arrest silence, any error was rendered harmless because the evidence of Jimenez's guilt was overwhelming, see United States v. Nunez-Rios, 622 F.2d 1093, 1101 (2d Cir. 1980), and because the District Court gave curative instructions to the jury, cf. United States v. Conlin, 551 F.2d 534, 537 (2d Cir. 1980). Specifically, the District Court informed the jurors that "[t]he defendant had a constitutional right to remain silent when she was arrested," and further cautioned the jury that it "may not consider [Jimenez's] failure to discuss the money in her bag at the time of her arrest for any reason, nor may [it] draw any adverse inference against the defendant from the fact that she later testified that she didn't know where the money came from." App'x at 858. For these reasons, we reject Jimenez's Fifth Amendment challenge.

7

We have considered Jimenez's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court